UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIE A. STOCK,

                Plaintiff,

v.                                      **DECISION AND ORDER**
                                                11-CV-903S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1. Plaintiff, Julie Stock, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Stock alleges that she has been disabled since June 1, 2008. She alleges that pain and fatigue from fibromyalgia, arthritis, and osteoarthritis render her unable to work. She therefore asserts that she is entitled to benefits under the Act.

2. Stock, 39 years old at the time, filed an application for disability insurance benefits under Title II of the Act on September 3, 2009. The Commissioner of Social Security ("Commissioner") denied her application, and as result, she requested an administrative hearing. She received that hearing before ALJ Robert T. Harvey on May 12, 2011. The ALJ considered the case *de novo*, and on May 24, 2011, he issued a decision denying Stock's application for benefits. Stock filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on October 26, 2011, challenging Defendant's final decision.[1]

3. On April 10, 2012, the Commissioner and Stock both filed motions for

---

[1] The ALJ's May 24, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded May 29, 2012, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Stock's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference,

and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Stock has not engaged in substantial gainful activity since her alleged onset date (R. 20);[2] (2) Stock suffers from two severe impairments, namely fibromyalgia and irritable bowl syndrome (id.); (3) Stock does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) Stock has past relevant work that she is unable to perform because of the presence of dangerous machinery (R. 26); and (5) she retains the residual functional capacity ("RFC") to perform sedentary work. Specifically, the ALJ found that she can lift/carry ten pounds, stand and/or walk for two hours and sit for six hours in an eight-hour workday. (R. 21.) She is limited, however, in that she cannot work in areas with heavy or dangerous machinery, or climb ropes, ladders, or scaffolds. (Id.) Further, she has occasional limitations in bending, climbing, stooping, squatting, kneeing, crawling, and in reach, handling, pulling and pushing. (Id.) She cannot be exposed to cold or heat. (Id.) Ultimately, the ALJ concluded that Stock was not under a disability as defined by the Act from her onset date through the date of the decision. (R. 27.)

9. Stock raises three challenges to the ALJ's decision: First, she argues that the ALJ improperly discredited the opinion of her treating physician. Second, she contends that the ALJ failed to weigh her non-exertional limitations when assessing her RFC. Last, she maintains that the ALJ erred by failing to consult a vocational expert. Each argument will be discussed, and rejected, in turn.

10. ALJ Harvey assigned "some, but not great weight" to the opinion of Stock's

---

[2]Citations to the underlying administrative record are designated "R."

4

treating physician, Dr. John Stubenbord. (R. 23.) Stock contends the ALJ should have assigned Dr. Stubenbord's opinion controlling weight under the "treating physician's rule."[3] Under this rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

11.   As an initial matter, Dr. Stubenbord's opinion, even if assigned controlling weight, would not necessarily compel a conclusion that Stock is disabled. In fact, Dr. Stubenbord twice evaluated Stock's RFC, and his findings are not dissimilar to those of the ALJ. The ALJ, for instance, found that Stock could lift/carry ten pounds, stand and/or walk for two hours and sit for six hours in an eight-hour workday. In October of 2009, Dr. Stubenbord similarly found that Stock could carry a maximum weight of ten pounds, stand and walk for less than two hours per day and sit for six hours per day. Like the ALJ, he also noted limitations in pushing and pulling. This is largely consistent with sedentary work as defined by the Act:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). A subsequent ruling has clarified that sedentary work generally

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period. SSR 83–10.

12.     To be sure, there are some differences between the ALJ's RFC and the October 2009 assessment of Dr. Stubenbord. In his assessment, for example, Dr. Stubenbord found that Stock exhibited symptoms of depression "secondary to fatigue" and had pain throughout the day. But these are relatively minor deviations, and do not compel a finding of disabled.

13.     A more significant difference, however, arises in Dr. Stubenbord's May of 2011 RFC assessment, which is similar to his earlier assessment except that Dr. Stubenbord noted that Stock required half an hour to an hour of time to lie down during the course of an eight-hour day. The ALJ assigned this specific opinion "little weight." (R. 23.) Stock objects to the determination, but this Court finds no error in this aspect of the ALJ's decision.

14.     Initially, it is not clear that, as Stock argues, her required rest period would preclude work. See Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980) (affirming a finding of "not disabled" despite need for half-hour afternoon rest). But even if it would, the ALJ's assignment of little weight to that opinion was not in error, as it conflicts with other evidence on record. Treatment notes from Dr. Robert Kaprove, a rheumatologist, indicate that Stock's fibromyalgia had improved (R. 318), and later that it was only "mildly active" (R. 338–39). Other notes indicate that she exercised four times a week with yoga and step aerobics. (R. 362.)[4] Her daily activities also suggest that Stock could perform a sedentary job. She cleans, cooks three times per day, washes dishes, mops, and generally cares for her family. (R. 170–77.) Treatment notes reflect an unlimited capacity to perform daily

---

[4]This conflicts with Stock's testimony at the hearing. There she stated that she performed step aerobics only once, for three minutes, before quitting because it caused too much fatigue. (R. 59–60.)

activities. (R. 318.) As such, this is not case where there is simply a lack of objective tests which could conclusively confirm her disease; rather, her own testimony and reports to her physicians serve as evidence on which the ALJ could rely in rejecting her application for benefits.

15. In the end, Dr. Stubenbord's RFC assessment differs with the ALJ's on only two points: the number of hours she can stand and the required rest period. Given the conflicting evidence listed above it cannot be said that the ALJ's assessment, which assigns Stock only slightly more capabilities than Dr. Stubenbord's, was not supported by substantial evidence.

16. In her next challenge, Stock maintains that the ALJ did not properly account for fatigue, joint pain, and tenderness from her fibromyalgia when assessing her RFC. This Court cannot agree.

First, the RFC assigns Stock the ability to perform sedentary work, which as described above, involves only limited lifting and up to six hours of sitting. It is the least fatigue-inducing level work available. Stock asserts that the ALJ "failed to explore [her] limitations by fatigue" and she points to various parts of the record that indicate she suffers from fatigue and lethargy. But there is no indication that these reports were ignored by the ALJ. To the contrary, the ALJ explicitly notes that in rendering his RFC assessment he considered all the symptoms. Moreover, he notes that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 22.) He even gave "the claimant the benefit of the doubt in assigning a sedentary residual functional capacity." (R. 26.) The ALJ therefore properly accounted for her fatigue in rendering the RFC and, considering the evidence as a whole, this Court finds that it is supported by substantial evidence.

17. Stock also argues that the ALJ should have explored Stock's mental limitations and rendered a separate mental RFC. There is, however, a dearth of evidence in the record establishing any significant mental limitation. Stock points to her testimony that sometimes she has trouble "think[ing]' straight" and Dr. Stubenbord's single notation in October 2009 that she has "problems concentrating." (R. 271.) But this is insufficient to diminish her RFC or require a mental RFC. See SSR 85-16 (limitation must impose a "significant restriction" to require a RFC). There is no indication that her problem in thinking or concentration result in limitations in "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." Id. The ALJ, therefore, did not err in failing to include a mental RFC.

18. Last, Stock argues that the ALJ's failure to consult a vocational expert constitutes reversible error. She argues that her additional "nonexertional" limitations preclude the evaluation of her claim solely pursuant to the medical-vocational guidelines.

19. As described by the Supreme Court, the purpose of the medical-vocational guidelines is "[t]o improve both the uniformity and efficiency of th[e disability] determination. Heckler v. Campbell, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983). The Court went on to explain:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such

8

work exists, the claimant is not considered disabled.

Id. But when a claimant suffers from additional "nonexertional" impairments, the guidelines, or "grid" rules may not be controlling because they do not account for these additional limitations. Indeed, the Social Security regulations provide that use of the grids may not be appropriate where "an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

20. In this case, ALJ Harvey found that Plaintiff's additional limitations have little effect on her RFC. He therefore utilized the grids, and given Stock's physical ability, age, education, and work experience, they directed a conclusion of "not disabled." See 20 C.F.R. Pt. 404, Subpt. P, App 2, Rule 201.27.

Pointing to the non-exertional limitation that ALJ Harvey identified as "handle (gross manipulation)", Stock argues that the ALJ's use of the grids was inappropriate and that a vocational expert was necessary. This Court disagrees.

21. "Application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." The use of a vocational expert is only necessary where the claimant's limitations "significantly limit the range of work permitted by h[er] exertional limitations." Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986). Here, the ALJ properly concluded that this gross-manipulation limitation, and the other limitations, he identified in his making his RFC, did not significantly limit her range of work so as to require a vocational expert.

22. Stock argues that because most sedentary jobs require the ability to "handle," or "gross manipulation," this limitation must be significant, rendering the grids inapplicable. But even accepting Stock's assertion that gross manipulation is necessary for many

sedentary jobs, this does not mean any limitation in this area, no matter what degree, is *ipso facto* significant. The ALJ found that she has only "occasional limitations" in gross manipulation. He did not find, and the evidence does not support a finding, that she has a more severe limitation. Instead, like the rest of Stock's appeal, there is simply not enough evidence indicating a significant disability that would allow this Court to determine that the ALJ erred. Although she testified that she requires help from her husband when cutting foods for an extended period (R. 56), and her hands and wrists can "tire" and become "achy" (R. 242), locking up "once or twice a month" (R. 42), this Court cannot conclude that the ALJ's finding – that these relatively minor limitations do not significantly diminish the full range of sedentary work that she can perform – was in error.

This challenge is therefore rejected.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.11) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: March 28, 2013
      Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                              Chief Judge
                                      United States District Court